UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Andrew Rodriguez<br><br>　　　　　　Plaintiff,<br><br>　　-against-<br><br>The City of New York; Gregory Smith, in his individual capacity; John and Jane Does 1 through 5, in their individual capacities,<br><br>　　　　　　Defendants. | ECF CASE<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL<br><br>12 Civ. 2888 (DAB) |

**PRELIMINARY STATEMENT**

1.	This is an action for money damages brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. §1983 for the Defendants' commissions of acts under color of law in violation of the Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States and the laws of the State of New York.

**JURISDICTION**

2.	This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988.

3.	Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a).

**VENUE**

4.	Venue is proper pursuant to 28 U.S.C. § 1391 (b) in that, *inter alia*, the events giving rise to the claim occurred in the Southern District of New York.

**JURY DEMAND**

5.	The Plaintiff demands a trial by jury on each and every one of his claims as pled

-1-

herein.

## PARTIES

6. The Plaintiff ANDREW RODRIGUEZ is a resident of New York City.

7. Defendant THE CITY OF NEW YORK (the "City") is a municipal corporation within the State of New York.

8. The New York City Police Department (the "NYPD") is the department of the City responsible for, among other functions, arresting persons for offenses and maintaining custody over such persons prior to their initial appearance in court. At all times relevant hereto, the NYPD, together with the City, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel. In addition, at all relevant times, the NYPD, together with the City, was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obeyed the Constitutions and laws of the United States and of the State of New York.

9. At all relevant times herein, defendants GREGORY SMITH, and JOHN and JANE DOES 1 THROUGH 5 (collectively, the "Individual Defendants") were police officers employed by the NYPD and each was acting in the capacity of agent, servant, and employee of the City.

10. The Plaintiff is unable to determine the actual names of John and Jane Does 1 through 5 at this time and thus sues them under fictitious names.

11. At all times relevant herein, the Individual Defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the City and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. The Individual Defendants were acting for and

on behalf of the City of New York at all times relevant herein with the power and authority vested in them as officers, agents and employee of the City of New York and incidental to the lawful pursuit of their duties as officers, employees and agents of the City of New York.

12. The Individual Defendants are sued in their individual capacities.

## STATEMENT OF FACTS

13. Around 11:00 PM on Friday, November 11, 2011, on the corner of 165th Street and Grant Avenue in the Bronx, the Plaintiff Andrew Rodriguez was returning home from a friend's house when he decided to stop by the corner store to get a soda.

14. On his way to the store, Mr. Rodriguez was approached by a former acquaintance named Pablo, with whom he briefly exchanged greetings.

15. Mr. Rodriguez then left Pablo and walked into the store.

16. At some point thereafter, Pablo also entered the store.

17. As Mr. Rodriguez was standing in line, he observed a man walk into the store and have a brief conversation with Pablo, then leave. Mr. Rodriguez saw Pablo quickly follow after him.

18. One of the Individual Defendants then approached Mr. Rodriguez, showed him his badge, handcuffed him behind his back, and told him that he was under arrest.

19. Mr. Rodriguez was then taken out of the store, where he was approached by four additional police officers.

20. Outside, one of the officers emptied Mr. Rodriguez's pockets, shook out his jacket, checked his sneakers, and patted him down, all while asking where he had the drugs.

21. Mr. Rodriguez repeatedly asserted that he had no drugs, to which the officer replied that if drugs were found on him, the officer would "knock [his] teeth out."

22. Mr. Rodriguez was put into a marked police car and driven to the 46th Precinct.

23. At the precinct, he was immediately taken to a bathroom where he was instructed to take off all his clothes, one article at a time, and shake them out.

24. He was then made to squat and spread his buttocks apart while the male police officer performed a visual body cavity search.

25. No drugs or anything else illegal was found.

26. After a short time at the precinct, Mr. Rodriguez was transported to Central Booking in the Bronx where he was held until his arraignment on the evening of November 12, 2011.

27. Mr. Rodriguez was charged, along with a Pablo Vasquez, with criminal sale of a controlled substance in the third degree (N.Y. Penal Law § 220.39(1)), criminal possession of a controlled substance in the third degree (N.Y. Penal Law § 220.16(1)), and criminal possession of a controlled substance in the seventh degree (N.Y. Penal Law § 220.03).

28. At his arraignment, bail was set at in the amount of $2,500.

29. Mr. Rodriguez remained in custody until the evening of November 16, 2011, after his mother posted the bail.

30. On or about December 7, 2011, a Grand Jury voted a "no true bill" and the criminal case against Mr. Rodriguez was dismissed.

31. The NYPD has a formal policy, contained in its Patrol Guide, by which it authorizes strip searches only in situations where "the arresting officer reasonably suspects that weapons, contraband, or evidence may be concealed upon the person or in the clothing in such a manner that they may not be discovered by the previous search methods. Other factors that should be considered in determining the necessity for a strip search include, the nature of the crime (serious violent

felony), arrest circumstances, subject's reputation (extremely violent person), act of violence, and discoveries from previous searches." Additionally, an NYPD directive, limiting and clarifying the strip search policy, was issued on May 13, 2004.

32. This notwithstanding, on information and belief, the NYPD has, and had at the time of the incident giving rise to this Compliant, a *de facto* policy and practice of strip-searching persons for reasons other than those specified in the Patrol Guide or NYPD directives.

## NOTICE OF CLAIM

33. On February 3, 2012, within 90 days from the dates the claims alleged in this Complaint arose, a Notice of Claim was served on the City.

34. At least 30 days have elapsed since the service of that Notice of Claim and adjustment or payment thereof has been neglected or refused.

35. The instant lawsuit is instituted within one year and 90 days after the dates the claims alleged in this Complaint arose.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 Against the Individual Defendants

36. All other paragraphs herein are incorporated by reference as though fully set forth.

37. By arresting, strip searching and detaining the Plaintiff, the Individual Defendants engaged under color of law in the violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 to, *inter alia*, be free from unreasonable searches and seizures, false arrest and imprisonment and malicious prosecution.

Case 1:12-cv-02888-DAB   Document 1   Filed 04/12/12   Page 6 of 7

## SECOND CAUSE OF ACTION
## 42 U.S.C. § 1983 Against the City of New York

38. All other paragraphs herein are incorporated by reference as though fully set forth.

39. Municipal liability for the violations of the Plaintiff's Fourth and Fourteenth Amendment rights rests upon the grounds set forth below.

40. At all times material to this Complaint, the defendant City, acting through the NYPD and the Individual Defendants, had *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

41. At all times material to this Complaint, the defendant City, acting through the NYPD and the Individual Defendants, had *de facto* policies, practices, customs and usages of failing to properly train, screen, supervise or discipline employees and police officers, and of failing to inform the Individual Defendants' supervisors of their need to train, screen, supervise or discipline said defendants. The policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

## THIRD CAUSE OF ACTION
## Pendant State Law Claim
## for False Arrest

42. All other paragraphs herein are incorporated by reference as though fully set forth.

43. By the actions described above, the Individual Defendants, jointly and severally, violated the Plaintiff's rights under New York law to be free from false arrest and imprisonment, as a direct and proximate result of which the Plaintiff suffered the loss of physical liberty.

44. Municipal liability for these torts rest upon principles of *respondeat superior*.

## FOURTH CAUSE OF ACTION
### Pendant State Law Claim for
### Malicious Prosecution

45. All other paragraphs herein are incorporated by reference as though fully set forth.

46. By the actions described above, the Individual Defendants, jointly and severally, violated the Plaintiff's rights under New York law to be free from malicious prosecution, as a direct and proximate result of which the Plaintiff suffered continued damage in his attempt to clear himself from the false and maliciously imposed charges.

47. Municipal liability rest upon principles of *respondeat superior*.

WHEREFORE, the Plaintiff requests that this Court:

1. Assume jurisdiction over this matter;

2. Award compensatory and punitive damages to the Plaintiff against the defendants, jointly and severally;

3. Award the Plaintiff reasonable costs, disbursements and attorney's fees; and

4. Grant any other relief the court deems appropriate.

Dated:  New York, New York
        April 12, 2012

>                     Respectfully submitted,
>                     Darius Wadia, L.L.C.
>
>
>                     /s/
>                     _____
>                     By:  Darius Wadia (Bar number DW8679)
>                     Attorney for Plaintiff
>                     233 Broadway, Suite 2208
>                     New York, New York  10279
>                     dwadia@wadialaw.com