UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Andrew Rodriguez<br><br>                     Plaintiff,<br><br>-against-<br><br>The City of New York; Gregory Smith, in his individual capacity; Undercover Officer # 114, in his individual capacity; Undercover Officer # 10, in his individual capacity, James Davis, in his individual capacity; Dexter Powers, in his individual capacity; Diana Spangenberg, in her individual capacity; John Scollo, in his individual capacity;<br><br>                     Defendants. | ECF CASE<br><br>FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL<br><br>12 Civ. 2888 (DAB) |

**PRELIMINARY STATEMENT**

1.      This is an action for money damages brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. §1983 for the Defendants' commissions of acts under color of law in violation of the Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States and the laws of the State of New York.

**JURISDICTION**

2.      This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988.

3.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a).

**VENUE**

4.      Venue is proper pursuant to 28 U.S.C. § 1391 (b) in that, *inter alia*, the events giving rise to the claim occurred in the Southern District of New York.

## JURY DEMAND

5. The Plaintiff demands a trial by jury on each and every one of his claims as pled herein.

## PARTIES

6. The Plaintiff ANDREW RODRIGUEZ is a resident of New York City.

7. Defendant THE CITY OF NEW YORK (the "City") is a municipal corporation within the State of New York.

8. The New York City Police Department (the "NYPD") is the department of the City responsible for, among other functions, arresting persons for offenses and maintaining custody over such persons prior to their initial appearance in court. At all times relevant hereto, the NYPD, together with the City, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel. In addition, at all relevant times, the NYPD, together with the City, was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obeyed the Constitutions and laws of the United States and of the State of New York.

9. At all relevant times herein, defendants Gregory Smith, Undercover Officer # 114, Undercover Officer #10, James Davis, Dexter Powers, Diana Spangenberg and John Scollo (collectively, the "Individual Defendants") were police officers employed by the NYPD and each was acting in the capacity of agent, servant, and employee of the City.

10. At all relevant times herein, defendant Gregory Smith held the rank of detective.

11. At all relevant times herein, defendant John Scollo held the rank of detective.

12. At all relevant times herein, defendant David Roberts held the rank of detective.

13. At all relevant times herein, defendant Dexter Powers held the rank of detective.

14. At all relevant times herein, defendant James Davis held the rank of lieutenant.

15. At all times relevant herein, the Individual Defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the City and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. The Individual Defendants were acting for and on behalf of the City of New York at all times relevant herein with the power and authority vested in them as officers, agents and employee of the City of New York and incidental to the lawful pursuit of their duties as officers, employees and agents of the City of New York.

16. The Individual Defendants are sued in their individual capacities.

## STATEMENT OF FACTS

17. Around 11:00 PM on Friday, November 11, 2011, on the corner of 165th Street and Grant Avenue in the Bronx, the Plaintiff Andrew Rodriguez was returning home from a friend's house when he decided to stop by the corner store to get a soda.

18. On his way to the store, Mr. Rodriguez was approached by a former acquaintance named Pablo, with whom he briefly exchanged greetings.

19. Mr. Rodriguez then left Pablo and walked into the store.

20. At some point thereafter, Pablo also entered the store.

21. As Mr. Rodriguez was standing in line, he observed a man walk into the store and have a brief conversation with Pablo, then leave. Mr. Rodriguez saw Pablo quickly follow after him.

22. Defendant Gregory Smith then approached Mr. Rodriguez, showed him his badge, handcuffed him behind his back, and told him that he was under arrest.

23. Mr. Rodriguez was then taken out of the store, where he was approached by four additional police officers.

24. Outside, one of the officers emptied Mr. Rodriguez's pockets, shook out his jacket, checked his sneakers, and patted him down, all while asking where he had the drugs.

25. Mr. Rodriguez repeatedly asserted that he had no drugs, to which the officer replied that if drugs were found on him, the officer would "knock [his] teeth out."

26. Mr. Rodriguez was put into a marked police car and driven to the 46th Precinct.

27. At the precinct, he was immediately taken to a bathroom where he was instructed to take off all his clothes, one article at a time, and shake them out.

28. He was then made to squat and spread his buttocks apart while the male police officer performed a visual body cavity search.

29. No drugs or anything else illegal was found.

30. After a short time at the precinct, Mr. Rodriguez was transported to Central Booking in the Bronx where he was held until his arraignment on the evening of November 13, 2011, approximately 44 hours after his arrest.

31. In a felony complaint sworn to by Defendant Smith, Mr. Rodriguez was charged, along with a Pablo Vasquez, with criminal sale of a controlled substance in the third degree (N.Y. Penal Law § 220.39(1)), criminal possession of a controlled substance in the third degree (N.Y. Penal Law § 220.16(1)), and criminal possession of a controlled substance in the seventh degree (N.Y. Penal Law § 220.03).

32. Mr. Rodriguez did not sell or exchange drugs with Mr. Vasquez or anyone else at the time in question.

33. Mr. Rodriguez did not have crack cocaine or any other controlled substance in his possession, custody or control at the time in question.

34. This notwithstanding, defendant Smith stated under penalties of prosecution in the felony complaint that he was informed by an undercover police officer, likely defendant Undercover Officer # 114, that Mr. Rodriguez engaged in a drug sale and that defendant Smith "observed defendants [Rodriguez and Vasquez] to have in their custody and control, in defendant Rodriguez's pants, twenty-nine (29) clear pink ziplock bags, each containing a white rock-like substance" which he believed and alleged to be crack cocaine.

35. Defendants Smith, Scollo, Davis and Undercover Officer # 114 also filled out police reports containing similar information, including an "Buy Report" signed by Undercover Officer # 114 describing the alleged drug sale.

36. The information and police reports were provided by one or more of the Individual Defendants, including defendant Smith, to a prosecutor or prosecutors at the Bronx County District Attorney's office.

37. Insofar as Mr. Rodriguez neither sold nor possessed a controlled substance at the time in question, the information provided by the Individual Defendants to the prosecutor, both verbally and in the police reports and felony complaint, was false.

38. At Mr. Rodriguez November 13, 2011 arraignment, bail was set at in the amount of $2,500.

39. Mr. Rodriguez remained in custody until the evening of November 16, 2011, after his mother posted the bail.

40. On or about December 7, 2011, a Grand Jury voted a "no true bill" and the criminal

case against Mr. Rodriguez was dismissed.

41. The NYPD has a formal policy, contained in its Patrol Guide, by which it authorizes strip searches only in situations where "the arresting officer reasonably suspects that weapons, contraband, or evidence may be concealed upon the person or in the clothing in such a manner that they may not be discovered by the previous search methods. Other factors that should be considered in determining the necessity for a strip search include, the nature of the crime (serious violent felony), arrest circumstances, subject's reputation (extremely violent person), act of violence, and discoveries from previous searches." Additionally, an NYPD directive, limiting and clarifying the strip search policy, was issued on May 13, 2004.

42. This notwithstanding, on information and belief, the NYPD has, and had at the time of the incident giving rise to this Compliant, a *de facto* policy and practice of strip-searching persons for reasons other than those specified in the Patrol Guide or NYPD directives.

## NOTICE OF CLAIM

43. On February 3, 2012, within 90 days from the dates the claims alleged in this Complaint arose, a Notice of Claim was served on the City.

44. At least 30 days have elapsed since the service of that Notice of Claim and adjustment or payment thereof has been neglected or refused.

45. The instant lawsuit is instituted within one year and 90 days after the dates the claims alleged in this Complaint arose.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 Against the Individual Defendants

46.    All other paragraphs herein are incorporated by reference as though fully set forth.

47.    By arresting, strip searching and detaining the Plaintiff, the Individual Defendants engaged under color of law in the violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 to, *inter alia*, be free from unreasonable searches and seizures, false arrest and imprisonment and malicious prosecution.

48.    By providing false information and/or evidence to the Bronx County District Attorney's office that was likely to influence a jury's decision, the Individual Defendants engaged under color of law in the violation of the Plaintiff's right to a fair trial under the Sixth Amendment to the United States Constitution and 42 U.S.C. § 1983.

### SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 Against the City of New York

49.    All other paragraphs herein are incorporated by reference as though fully set forth.

50.    Municipal liability for the violations of the Plaintiff's Fourth and Fourteenth Amendment rights rests upon the grounds set forth below.

51.    At all times material to this Complaint, the defendant City, acting through the NYPD and the Individual Defendants, had *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

52.    At all times material to this Complaint, the defendant City, acting through the NYPD and the Individual Defendants, had *de facto* policies, practices, customs and usages of failing to properly train, screen, supervise or discipline employees and police officers, and of failing to inform

the Individual Defendants' supervisors of their need to train, screen, supervise or discipline said defendants. The policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

### THIRD CAUSE OF ACTION
### Pendant State Law Claim
### for False Arrest

53. All other paragraphs herein are incorporated by reference as though fully set forth.

54. By the actions described above, the Individual Defendants, jointly and severally, violated the Plaintiff's rights under New York law to be free from false arrest and imprisonment, as a direct and proximate result of which the Plaintiff suffered the loss of physical liberty.

55. Municipal liability for these torts rest upon principles of *respondeat superior*.

### FOURTH CAUSE OF ACTION
### Pendant State Law Claim for
### Malicious Prosecution

56. All other paragraphs herein are incorporated by reference as though fully set forth.

57. By the actions described above, the Individual Defendants, jointly and severally, violated the Plaintiff's rights under New York law to be free from malicious prosecution, as a direct and proximate result of which the Plaintiff suffered continued damage in his attempt to clear himself from the false and maliciously imposed charges.

58. Municipal liability rest upon principles of *respondeat superior*.

WHEREFORE, the Plaintiff requests that this Court:

1. Assume jurisdiction over this matter;

2. Award compensatory and punitive damages to the Plaintiff against the defendants, jointly and severally;

3. Award the Plaintiff reasonable costs, disbursements and attorney's fees; and

4. Grant any other relief the court deems appropriate.

Dated: New York, New York
April 2, 2013

                                      Respectfully submitted,
                                      Darius Wadia, L.L.C.

/s/
_____
By: Darius Wadia (Bar number DW8679)
Attorney for Plaintiff
233 Broadway, Suite 2208
New York, New York  10279
dwadia@wadialaw.com